# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> BOBBY RAY RHODEN, <br><br> Defendant. | No. CR22-4073-LTS <br><br> **ORDER ON REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

This matter is before me on a Report and Recommendation (R&R) (Doc. 125) in which the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge, recommends that I deny defendant's motion (Doc. 113) to dismiss Count I of the second superseding indictment, which charges him with kidnapping in violation of the Federal Kidnapping Act, 18 U.S.C. § 1201(a)(1). *See* Doc. 94. Rhoden has filed timely objections (Doc. 130).

## II. APPLICABLE STANDARDS

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. DISCUSSION

Rhoden argues Count 1 should be dismissed because (1) Congress did not intend to criminalize wholly intrastate crimes committed with an automobile and (2) that absent explicit direction from Congress that an automobile is an "instrumentality of interstate commerce," "the use of a common automobile in an alleged intrastate kidnapping – standing alone – is insufficient to confer federal jurisdiction pursuant to Congress' Commerce Clause authority." Doc. 117. Rhoden is charged under 18 U.S.C. § 1201(a)(1) which makes it a crime for a person who:

> unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person . . . when . . . the offender . . . uses . . . any means, facility, or instrumentality of

interstate or foreign commerce in committing or in furtherance of the commission of the offense.

Judge Mahoney observed it is difficult to see the difference between this argument and the one that was previously rejected. *See* Doc. 63. In any event, she rejected Rhoden's argument that the use of an automobile in an intrastate kidnapping, standing alone, cannot establish federal jurisdiction under the Commerce Clause. She reasoned that it is the instrumentality itself (here, automobiles) used in the crime, not *how* it was used, that establishes the jurisdictional hook. Doc. 125 at 3-5.

Rhoden objects to the R&R, arguing that it did not address the precise issue he raised, which he characterizes as: "did Congress indicate an intention in 18 U.S.C. § 1201 to assert its Commerce Clause authority to bring under federal jurisdiction non-economic criminal kidnapping occurring entirely intrastate simply because a defendant uses a common automobile?" Doc. 130 at 6. Rhoden raises an objection to the factual finding in the R&R that "the court has no information as to what evidence, if any, the Government may offer about the automobile's movements in interstate commerce (apart from the intrastate kidnapping itself)." Doc. 125 at 5, n.17. Rhoden cites the "Facts" section of his brief (Doc. 117 at 4-5) in support of his motion and notes the Government did not challenge it. There is no allegation that Rhoden moved the victim in interstate commerce using the automobile.[1]

Rhoden also raises legal objections, arguing that the instrumentality rationale amounts to a strict liability analysis – that if an alleged kidnapper uses an automobile in the commission of the offense, then it is a federal crime. Rhoden argues this reasoning fails to consider how the jurisdictional element (the interstate nexus) limits the statute's scope and fails to recognize that Congress does not have authority to regulate kidnapping

---

[1] For purposes of this motion, I will accept Rhoden's representation that the alleged crime involved a wholly intrastate use of the vehicle in committing or in furtherance of the commission of the offense.

3

in an unbridled manner without undermining Commerce Clause jurisprudence and federalist principles. *See* Doc. 130 at 9.

Rhoden relies on *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000), to argue that the prosecution of Count I exceeds the authority granted by Congress. He notes that those defending the applicable statutes in each of those cases relied on the substantial effects doctrine regarding Congress' authority to regulate possession of firearms in a school zone and compensation to victims of gender-motivated violence. Similar to those arguments, Rhoden argues that wholly intrastate kidnapping is a non-economic crime and Congress may not regulate non-economic intrastate crime to further a non-economic goal. He contends the mere presence of a jurisdictional element in a statute does not establish that the regulation contains a sufficient nexus with interstate commerce to provide constitutional justification for Congress' regulation. In *Morrison*, the Court stated "[t]he regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." *Morrison*, 529 U.S. at 618. Rhoden relies on this statement to argue that mere "use" of an instrumentality of interstate commerce is insufficient and that the alleged kidnapper must "direct" his offense conduct at an instrumentality of interstate commerce to bring the offense within federal authority.

I will begin with a discussion of *Lopez* and *Morrison*, as these are the main authorities Rhoden relies on for his argument. In *Lopez*, the Court considered the constitutionality of the Gun-Free School Zones Act of 1990, which made it a federal offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." *Lopez*, 514 U.S. at 551. The Court noted the Act "neither regulates a commercial activity nor contains a requirement that the possession be connected in any way to interstate commerce" and held that the Act exceeded Congress' authority "[t]o regulate Commerce . . . among the several States." *Id.* (quoting U.S. Const. Art. I, § 8, cl. 3). The Court identified three

4

broad categories of activity that Congress may regulate under its commerce power: channels of interstate commerce, instrumentalities of interstate commerce and activities that substantially affect interstate commerce. *Id.* at 558. The Government argued that Congress' authority to regulate firearms in school zones fell under the third category on a theory that possession of a firearm in a school zone could result in violent crime and violent crime could affect the national economy based on costs (particularly insurance) and the willingness of individuals to travel to areas within the country perceived to be unsafe. *Id.* at 563-64. It also argued that the presence of firearms in schools posed a substantial threat to the educational process by threatening the learning environment and resulting in a less productive citizenry. *Id.* at 564. The Court rejected these arguments, noting it would need to "pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Id.* at 567.

*Morrison*, too, involved the issue of whether the statute in that case (providing a federal civil remedy for victims of gender-motivated violence) constituted regulation of an activity that substantially affects interstate commerce. *Morrison*, 529 U.S. at 609. Relying on *Lopez*, the Court identified four relevant considerations: (1) whether the regulation of intrastate activity has some sort of economic endeavor; (2) whether there is an express jurisdictional element establishing an explicit connection with or effect on interstate commerce; (3) whether there were express congressional findings regarding the effects upon interstate commerce and (4) whether the link between the regulated activity and a substantial effect was too attenuated. *Id.* at 610-12. Based on these considerations, the Court concluded: (1) "[g]ender-motivated crimes of violence are not, in any sense of the phrase, economic activity;" (2) the statute contained no jurisdictional element; (3) while there were numerous congressional findings regarding the impact of gender-motivated violence on victims and their families, they relied on reasoning the Court had already rejected (diminishing national productivity, increasing medical and other costs and decreasing the supply of and demand for interstate products) and (4) petitioners'

5

reasoning would allow Congress' authority to extend to numerous other crimes as well as other areas of traditional state regulation. *Id.* at 613-15. Thus, the Court concluded that Congress could not regulate "noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id.* at 617.

Rhoden's attempt to apply the reasoning from these cases onto the Federal Kidnapping Act, and the circumstances of this case, is not persuasive because Congress' authority is based on an instrumentality of interstate commerce, not regulation of an activity that substantially affects interstate commerce. As such, *Lopez* and *Morrison* have little bearing on the issue as they involved a separate category of regulation and Rhoden's arguments are unique to that category. *See United States v. Alderman*, 565 F.3d 641, 647 (9th Cir. 2009) ("In *Morrison*, the Supreme Court established what is now the controlling four-factor test for determining whether a regulated activity substantially affects interstate commerce."); *United States v. Gil*, 297 F.3d 93, 100 (2d Cir. 2002) ("A showing that a regulated activity substantially affects interstate commerce (as required for the third category) is not needed when Congress regulates activity in the first two categories."); *United States v. Gilbert*, 181 F.3d 152, 158-59 (1st Cir. 1999) ("*Lopez* does not apply because a telephone is an instrumentality of interstate commerce and this alone is a sufficient basis for jurisdiction based on interstate commerce.").

Rhoden states that the main issue he wants the court to answer is whether Congress indicated an intention in 18 U.S.C. § 1201 to assert its Commerce Clause authority to non-economic, intrastate kidnapping simply because a defendant uses an automobile. Doc. 130 at 6. The plain language of the statute would indicate the answer is "yes." The statute requires use of "the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense" for there to be a violation. *See* 18 U.S.C. § 1201(a)(1). Nonetheless, Congress' intent is not dispositive as to the constitutionality of a statute. *See Lopez*, 514 U.S. at 557, n.2 ("[S]imply because Congress may conclude that a particular activity substantially affects interstate commerce does not necessarily make it so" and noting that "[w]hether particular

6

operations affect interstate commerce sufficiently to come under the constitutional power of Congress to regulate them is ultimately a judicial rather than a legislative question, and can be settled finally only by this Court."). In other words, whether Congress intended to regulate this type of activity (based on substantial effect or otherwise) is beside the point, as it is up to the court to decide whether an activity falls within the scope of Congress' Commerce Clause power.

The Government relies on Rhoden's use of an automobile to charge him with a violation of 18 U.S.C. § 1201. *See* Doc. 121 at 2. Rhoden argues that mere "use" is not enough and that the regulation must be "directed at" an instrumentality or channel of interstate commerce. This argument is based on dicta in *Morrison* stating "[t]he regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." *Morrison*, 529 U.S. at 618. Of course, the statute requires only "use." *See* 18 U.S.C. § 1201(a)(1) ("or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense."). While I agree that the statute is aimed at regulating the crime of kidnapping, as opposed to an instrumentality of commerce, such as vehicles, Rhoden does not cite any authority (aside from the statement in *Morrison*) that use of an instrumentality is insufficient to establish federal jurisdiction.

I agree with Judge Mahoney that based on current precedent, the intrastate use of an instrumentality of interstate commerce to carry out a crime is enough to bring it under Congress' authority pursuant to the Commerce Clause. I do not find *United States v. Chavarria*, No. 22-CR-1724-KG, 2023 WL 3815203, at *1 (D.N.M. June 5, 2023), *appeal filed*, No. 23-2102 (10th Cir. July 6, 2023) to be persuasive. In that case, the court relied on a Tenth Circuit case and applied the *Lopez* and *Morrison* framework to the issue, even though it acknowledged that the kidnapping statute involved a different category of regulation. *See Chavarria*, 2023 WL 3815203 at *6 ("Based on the reasoning of the Supreme Court in *Lopez*, as well as in *Morrison* applying *Lopez*, this Court finds

7

persuasive the impropriety of extending federal jurisdiction under the Commerce Clause because of a use of a vehicle without explicit congressional intent to regulate non-economic criminal behavior and with no jurisdictional or case-by-case inquiry."). As Judge Mahoney points out, this case is an outlier among the other courts to address this issue, including several circuit courts of appeal. *See United States v. Windham*, 53 F.4th 1006, 1013 (6th Cir. 2002) ("[w]hen a car or a cell phone is used 'in committing or in furtherance of' a kidnapping for ransom, reward, or otherwise, the federal kidnapping statute applies."); *United States v. Protho*, 41 F.4th 812, 828-29 (7th Cir. 2022) ("it's the nature of the regulated object's class (here, automobiles) rather than the particular use of one member of that class (Protho's Ford Explorer) that matters."); *United States v. Gonzales*, No. 21-10631, 2022 WL 1421032, at *1 (5th Cir. May 5, 2022), *cert. denied sub nom.*, 143 S. Ct. 223 (2022) ("we have recognized that the interstate nexus requirement for federal crimes is satisfied by, as pertinent here, the wholly intrastate use of an automobile.").

As the Government points out, the Eighth Circuit seems inclined to agree that nothing more is required when jurisdiction is based on an instrumentality of interstate commerce. *See United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007) ("No additional interstate nexus is required when instrumentalities or channels of interstate commerce are regulated."). While the Federal Kidnapping Act is not a direct regulation of an instrumentality (such as a vehicle or cell phone), it is an indirect regulation in that it prohibits use of those instrumentalities to carry out or further the crime of kidnapping. Thus, the statute reflects a limit on federal power such that it would not extend to all kidnappings. Count I of the second superseding indictment does not exceed Congress' authority under the Commerce Clause.

## IV. CONCLUSION

For the reasons set forth herein:

1. Rhoden's objections (Doc. 130) to the R&R (Doc. 125) are **overruled**;

2. I accept the R&R (Doc. 125) without modification, *see* 28 U.S.C. § 636(b)(1);

3. Pursuant to Judge Mahoney's recommendation, Rhoden's motion (Doc. 113) to dismiss Count I of the second superseding indictment is **denied**.

**IT IS SO ORDERED.**

**DATED** this 6th day of February, 2024.

_____
Leonard T. Strand, Chief Judge